IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STEVEN NAPOLITANO, | ) | CASE NO. 8:08CV299 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| OMAHA AIRPORT AUTHORITY and | ) | |
| GARY SCHOTT, named in his | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Partial Summary Judgment (Filing No. 39). For the reasons stated below, the Motion will be granted in part, and denied in part.

## PROCEDURAL BACKGROUND AND FACTS

The Plaintiff, Steven Napolitano, brought this action against the Omaha Airport Authority ("OAA"), a political subdivision of the State of Nebraska, and Gary Schott, who at all relevant times was the Chief of the OAA Fire Department. (Complaint, Filing No. 1 at ¶¶ 6-9). Napolitano was employed by the OAA as a fire fighter, assigned to "Shift A" under Captain Phillip Goulette's supervision, until Napolitano's termination on December 7, 2007. ( Filing No. 1 at ¶¶ 10, 13). At the time of his termination, Napolitano was the President of the Eppley Professional Fire Fighters, an organization affiliated with the International Association of Fire Fighters as Local 4573 ("Local 4573"). (Filing No. 1 at ¶ 11). As a firefighter, Napolitano's job duties included "responding to medical and fire emergencies at Eppley Airfield, and participating in the control and extinguishment of fires and other related rescue operations." (Filing No. 43 at 2, ¶ 1). As Chief of the OAA Fire Department, Schott reported to both Deputy Executive Director Steve Coufal and Executive Director Don Smithey. (Filing No. 43 at 3, ¶¶ 2-3).

In his Complaint, Napolitano asserts that he "spoke out on matters of public concern, including but not limited to Chief Scott's efforts to intimidate employees into making false statements against a supervisor who is also a Union supporter." (Filing No. 1 at ¶ 31). In response to the Defendants' interrogatories, Napolitano stated that he raised concerns about a lack of proper ventilation from vehicle exhaust and OAA's failure to remove contaminants from firefighters' gear. (Filing No. 43 at 10-11, ¶¶ 6-12). Napolitano alleged that such deficiencies jeopardized firefighters' health and left them at risk for cancer. (Filing No. 43 at 11, ¶ 10). Napolitano contends that because he actively supported Local 4573 and spoke out on issues related to firefighters safely, the OAA and Schott retaliated against him and terminated his employment. (*See* Filing No. 1).

In support of his claim, Napolitano describes a sequence of events that he suggests illustrates such retaliation. He notes that his supervisor, Goulette, "was required to schedule and conduct the familiarization sessions for fire fighters on Shift 'A.'" (Filing No. 1 at ¶ 15). Napolitano alleges that Goulette completed the required training and filled out the proper forms, and Napolitano signed the forms, attesting to their accuracy. (Filing No. 1 at ¶ 16-17). Schott, however, accused Goulette of falsifying certain information on these forms. (Filing No. 1 at ¶ 19). Napolitano contends that Schott raised these allegations against Goulette one day after Napolitano informed Schott that Local 4573 would be submitting grievances on certain matters, including OAA's alleged "failure to extract fire fighter turnout gear." (Filing No. 43 at 13, ¶ 21). Napolitano contends Schott made the decision to initiate the investigation into Goulette's alleged falsification of the forms and Napolitano's involvement, and Schott conducted the investigation. (Filing No. 43 at 5-6, ¶¶ 6, 8-11). Napolitano states that at least two other Shift A firefighters disagreed with

2

Schott's conclusion that Goulette falsified the forms, but Napolitano was the only firefighter terminated as a result of the investigation. (Filing No. 1 at ¶¶ 27-28).

In response to Napolitano's allegations, the Defendants contend that Schott did not have final authority to terminate Napolitano's employment, but rather had "authority to make recommendations to Coufal with respect to disciplinary action to be taken." (Filing No. 40 at 4, ¶ 13).  According to the Defendants, Schott conducted his investigation after "Coufal determined that an investigation into the allegation of falsification of training was necessary" (Filing No. 40 at 3, ¶ 8), and following that investigation, Schott "recommended that Plaintiff be terminated, and the decision was approved by Coufal and Smithey." (Filing No. 40 at 4, ¶ 14).

In his Complaint, Napolitano presents claims based on two causes of action pursuant to 42 U.S.C. § 1983, and a third cause of action pursuant to Neb. Rev. Stat. § 48-824 (Reissue 2004).  First, he alleges that the Defendants violated his right of free speech under the First and Fourteenth Amendments to the United States Constitution by taking adverse actions against him, in an effort to silence his speech on matters of public concern. (Filing No. 1 at ¶¶ 30-36).  Second, he alleges that the Defendants violated his right of public association under the First and Fourteenth Amendments to the United States Constitution by taking adverse actions against him due to his association with Local 4573. (Filing No. 1 at ¶¶ 37-44).  Third, he alleges that the Defendants violated the Nebraska Industrial Relations Act, Neb. Rev. Stat. § 48-824(2)(a), (c) and (d), by discriminating against him due to his association with Local 4573. (Filing No. 1 at ¶¶ 45-53).  Napolitano raises all three claims against the OAA and against Schott, in both his official and individual capacities. (Filing No. 1).  Napolitano seeks declaratory and injunctive relief, compensatory and punitive damages, and other relief. (Filing No. 1 at 12-14).

On February 17, 2009, the Defendants filed the instant Motion for Partial Summary Judgment. (Filing No. 39).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109-1110 (8th Cir. 2006) (citing *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005))*.* The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. Pro. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id*. at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. Pro. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*. at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural

4

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

## DISCUSSION

### 1.   Whether Napolitano Spoke Out on a Matter of Public Concern

In support of their Motion for Partial Summary Judgment, Defendants suggest that the Court should dismiss Napolitano's first claim for relief because the undisputed facts show that his speech was not public and did not address a matter of public concern. The Defendants argue that Napolitano's speech, therefore, is not deserving of First Amendment protection. The evidence before the Court, however, demonstrates that Napolitano did speak out publicly on matters of public concern; his speech warrants First Amendment protection; and the Court will deny the Defendants' Motion to dismiss Napolitano's first claim for relief as to both Defendants.

Public employees do not shed all their constitutional rights during the course of their employment. *See Connick v. Myers*, 461 U.S. 138, 142 (1983)("[A] State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

This constitutional protection, however, is not limitless. "To succeed on a First Amendment retaliation claim, a public employee plaintiff must show: (1) he engaged in protected speech, that is, speech on a matter of public concern; (2) his interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient

5

public service; and (3) his speech was a motivating factor in the action taken against him." *Bailey v. Dept. of Elementary and Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006). Because the Defendants only argue that Napolitano cannot meet the first of the three *Bailey* elements, the Court will only discuss the question of whether Napolitano's speech addressed a matter of public concern.

The Defendants do not dispute Napolitano's assertions about the substance of his statements. The record reflects that he spoke out on matters relating to the safety and welfare of the firefighters employed by OAA. (Filing No. 43 at 10-11). Specifically, his speech raised concerns about cancer risks posed by contaminated gear and unsafe exhaust systems, as well as concerns that the brakes and suspensions in vehicles used by firefighters were not adequate. (Filing No. 43 at 10-12). Napolitano also expressed concerns that a vehicle used to haul the firefighters' rescue boat, and a hazardous materials trailer, was overweight. (Filing No. 43 at 11-12). Napolitano presented these concerns to Coufal, Schott, and Training Captain Terry Haese. (Filing No. 43 at 10, ¶ 6).

Defendants contend that Napolitano's speech concerning the safety and welfare of OAA firefighters did not warrant First Amendment protection because it did not address a matter of public concern. "Matters of public concern include matters of political, social, and other concern to the community." *Belk v. City of Eldon,* 28 F.3d 872, 878 (8th Cir. 2000). The Eighth Circuit Court of Appeals has reasoned that a public employee's speech regarding the purchase of firefighting equipment addressed a matter of public concern because the speech "implicated the quality and safety of the fire department." *Shands v. City of Kennett*, 993 F.2d 1337, 1343 (8th Cir. 1993). "Firefighters are in the business of protecting property from destruction and saving lives. The effectiveness of their equipment and their general safety and welfare are of crucial import to the society which they serve."

*Fire Fighters Ass'n, District of Columbia v. Barry*, 742 F.Supp. 1182, 1192 (D.D.C., 1990). Napolitano's speech concerning the OAA firefighters' equipment and vehicles addressed matters of public concern.

Defendants also suggest that because Napolitano directed his speech to Coufal, Schott, and Haese, and not to the public at large, the speech was not "public" and did not address a matter of public concern for First Amendment purposes. "A public employee does not necessarily give up his right to free speech, and the protection of the First Amendment, simply because his speech is private, and not expressed to the public." *Buazard v. Meridith*, 172 F.3d 546, 549 (8th Cir. 1999). Instead, "[c]omplaints to superiors or private communications with an employer about matters of public concern are also protected under the first amendment." *Campbell v. Arkansas Dept. of Correction*, 155 F.3d 950, 959 (8th Cir. 1998). Napolitano's speech to his supervisors, therefore, was protected.

Finally, Defendants argue that Napolitano's speech did not warrant First Amendment protection because it was made pursuant to his job duties. It is true that "[w]hen a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Buazard*, 172 F.3d at 548 (internal citations omitted). The First Amendment, however, does protect speech related to the public employee's job, so long as the speech was not made pursuant to the employee's job duties. *Garcetti*, 547 U.S. at 423.

Upon review of the record, the Court concludes that Napolitano did not make his speech pursuant to his job duties. As a firefighter employed by the OAA, Napolitano "was not responsible for investigating, researching, reporting, and raising safety issues." (Filing No. 43 at 9, ¶ 2). Instead, it was the OAA captains that "generally planned and conducted

7

safety meetings." (Filing No. 43 at 10, ¶ 2). As such, Napolitano spoke not as an employee, but as a concerned citizen.

Because Napolitano spoke out on a matter of public concern, the Defendants' Motion for Partial Summary Judgment regarding his first claim for relief will be denied.

### 2. Whether Napolitano's Claims against Schott Should be Dismissed for Failure to Establish that Schott was the "Decision-Maker"

Defendants contend that Napolitano's first and second claims against Schott should be dismissed because Schott's degree of involvement in the decision to terminate Napolitano's employment was not sufficient to give rise to liability under 42 U.S.C. § 1983. Specifically, the Defendants argue that Schott did not have the authority to terminate Napolitano's employment, but, rather, that the decision came from the OAA Executive Director. (Filing No. 40 at 2, ¶ 4). The Court concludes that Napolitano has sufficiently "allege[d] specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights" such that his § 1983 claims against Schott survive the Defendants' Motion. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990)(citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). "To establish personal liability of [a] supervisory defendan[t], [the Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga*, 442 F.3d at 1132. "A defendant will not be held liable under 42 U.S.C. s 1983 unless he was personally involved in causing the deprivation of a constitutional right or he either has or is charged with having actual knowledge that his subordinates are causing deprivations of constitutional rights." *Triplett v. Azordegan*, 570 F.2d 819, 823 (8th Cir. 1978).

Napolitano's claims against Schott will not be dismissed on summary judgment at this stage in the proceedings, because a genuine issue of material fact exists regarding Schott's degree of involvement in the alleged deprivation of Napolitano's constitutional rights. The Defendants contend that it was Coufal who initiated the investigation and ordered Schott to conduct the interviews that eventually led to the termination of Napolitano's employment. (Filing No. 40 at ¶ 8). Napolitano, however, has submitted evidence to support his contention that "Schott could not recall whether Coufal instructed him to conduct an investigation[, and] Coufal did not testify that he instructed Schott to conduct an investigation." (Filing No. 43 at 5, ¶ 8). Napolitano also submitted evidence in support of his allegation that "Schott made the decision to review the mileage cards . . . and to review the camera videos." (Filing No. 43 at 5, ¶ 6)(internal citations omitted). Napolitano has presented evidence to support his contention that Schott scheduled the investigatory interviews and developed the questions for the interview with Napolitano himself – which ultimately led to his termination. (Filing No. 43 at 6, ¶ 9).

While the Defendants have submitted evidence to contradict Napolitano's factual allegations regarding Schott's level of involvement in the decision to terminate Napolitano's employment, Napolitano has satisfied his evidentiary burden to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. Pro. 56(e)). Summary judgment on this issue is not proper, because the evidence Napolitano has presented regarding Schott's personal involvement in the alleged deprivation of Napolitano's rights constitutes "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Napolitano's evidence regarding Schott's involvement in the termination,

if found to be true, would establish "a casual link to . . . the deprivation of [his] rights." *Madewell*, 909 F.2d at 1208 (citing *Rizzo*, 423 U.S. at 370-71).

Accordingly, the Court will deny the Defendants' Motion for Partial Summary Judgment, presented under the theory that Napolitano has failed to establish that Schott was sufficiently involved in the deprivation of Napolitano's constitutional rights.

### 3. Whether Defendant Schott is Entitled to Summary Judgment on All Claims Against Him in His Official Capacity

The Defendants argue that summary judgment is warranted on all of Napolitano's claims against Schott in his official capacity because such claims are duplicative of Napolitano's claims against the OAA. The Defendants cite an Eighth Circuit Court of Appeals decision in support of their proposition that because "a suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent,'" the suit should be dismissed as "duplicative." (Filing No. 49 at 3)(citing *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007)(citations omitted)).

The *Baker* Court, however, did not dismiss the plaintiff's claims against the defendant *because* the defendant pled duplicative claims against both the government entity and the individual defendant in his official capacity. *See Baker*, 501 F.3d at 925. Instead, the *Baker* Court reasoned that because "the district court issued a final order dismissing on the merits the official-capacity claims against the other County defendants . . . [the plaintiff's] official-capacity claims against [the remaining two defendants in their official capacities] are barred by the doctrine of res judicata." *Id.* To date, this Court has not dismissed any of Napolitano's claims against the OAA. Accordingly, the fact that

10

Napolitano's claims against Schott, in his official capacity, may be duplicative of his claims against the OAA does not warrant dismissal of the claims.[1]

### 4. Whether Schott is Entitled to Qualified Immunity in his Individual Capacity

Defendants also suggest that Schott is entitled to qualified immunity from suit with respect to Napolitano's claims against him in his individual capacity. The Court concludes that, if Napolitano's allegations against Schott are found to be true, a reasonable official in Schott's position would have understood that the alleged actions constituted a violation of Napolitano's constitutional rights. As such, Schott is not entitled to the defense of qualified immunity.

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). "In deciding whether an official is entitled to qualified immunity, the Court asks two questions: (1) whether . . . there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "The protection of qualified immunity applies regardless of whether the government official's

---

[1] Defendants also rely on *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 923 -24 (8th Cir. 1998), for the proposition that naming both a county and a sheriff, in his official capacity, would be "'merely duplicative.'" (Filing No. 49 at 3 (citing *Doe*, 150 F.3d at 924)). In *Doe*, the Court addressed an inconsistent jury verdict by which "[t]he jury found liability on the part of the county, but not on the part of the sheriff in his official capacity." *Doe*, 150 F.3d at 923. While Napolitano's claims against the OAA and against Schott in his official capacity may be viewed as duplicative, it is recognized that Napolitano is seeking injunctive relief, and that the naming of the Chief of the OAA Fire Department in his official capacity may serve a practical purpose when and if the Court is faced with the task of fashioning injunctive relief.

error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 129 S.Ct. At 815 (internal quotations omitted). "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005)(citations omitted).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson*, 129 S.Ct. at 815-816 (citing *Saucier*, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 816. In *Pearson*, the Supreme Court reconsidered the *Saucier* sequence and concluded that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Id.* at 818. The Supreme Court's decision in *Pearson*, however, "does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821.

First, the Defendants argue that Schott is entitled to qualified immunity because Napolitano did not speak out on a matter of public concern, and thus, has not established a violation of a constitutional right with respect to his first claim against Schott. Because this Court has concluded that Napolitano has met his burden of coming forward with sufficient evidence to demonstrate genuine issues of material fact on his first claim, qualified immunity will not be granted on the theory that no deprivation of a constitutional right has been shown.

Second, the Defendants contend that Napolitano has failed to demonstrate that he suffered a violation of any constitutional right with respect to his second claim for relief against Schott. Specifically, the Defendants suggest that Schott's alleged prohibition against union stickers, his alleged prohibition against the holding of union meetings in certain locations, and his alleged termination of Napolitano's employment in an attempt to thwart his association with the union, did not constitute violations of Napolitano's constitutional rights. The Court, however, finds that it is well-settled law that "[t]he first amendment is violated by state action whose purpose is . . . to intimidate public employees . . . from taking an active part in [union] affairs or to retaliate against those who do." *Roberts v. Van Buren Public Schools*, 773 F.2d 949, 957 (8th Cir. 1985)(citing *Prof'l Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984)). As the Eighth Circuit has recognized, "the right of union membership would be meaningless unless an employee's right to participate in union activities were also recognized." *Id.* (internal quotations omitted). Because Napolitano has come forward with sufficient evidence to demonstrate genuine issues of material fact on his second claim, qualified immunity will not be granted on the theory that no deprivation of a constitutional right has been shown.

Next, the Court must consider "whether the[se two] right[s were] clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful." *Vaughn*, 557 F.3d at 908. "An official loses immunity if the law he violated was clearly established at the time of the violation, and the applicability of the law to his particular action was evident." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson-El v.*

13

*Schoemehl*, 878 F.2d 1043, 1048 (8th Cir.1989). "In other words, a constitutional right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 675 (8th Cir. 2004)(quoting *Saucier*, 533 U.S. at 202 (*overruled on other grounds by Pearson*, 129 S.Ct. 808)). "Where an official could be expected to know that his conduct would violate statutory or constitutional rights, he should be made to hesitate." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985)(internal citations and quotations omitted).

"The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis v. Hall*, 375 F.3d 703, 711 -712 (8th Cir. 2004)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Id.* at 712 (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992)).

In evaluating whether a constitutional right is clearly established, the Court applies a "flexible standard, requiring some, but not precise factual correspondence with precedent, and [application of] general, well-developed legal principles." *Burton v. Richmond,* 276 F.3d 973, 976 (8th Cir.2002)(quotations and citations omitted). The Court looks "to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit." *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001). "Although earlier cases need not involve fundamentally or materially similar facts, the earlier cases must give officials 'fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Meloy v. Bachmeier*, 302 F.3d 845, 848 (8th Cir. 2002)(quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

A public employee's constitutional right to speak out on matters related to the safety and welfare of firefighters is clearly established. Fifteen years ago, the Eighth Circuit held that a public employee has a constitutionally protected right to speak out on matters that "implicat[e] the quality and safety of [a public] fire department." *Shands*, 993 F.2d at 1343. The Eighth Circuit Court of Appeals is not the only Court to have recognized this right. Eighteen years ago the United States District Court, District of Columbia, recognized a firefighter's right to speak publicly about issues related to "[t]he effectiveness of their equipment and their general safety and welfare." *Fire Fighters Ass'n*, 742 F.Supp. at 1192. Accordingly, the Court finds that Schott was not faced with a constitutional "gray area." *Davis*, 375 F.3d at 712.

A public employee's right to freedom of association with a union was also clearly established at the time that Schott allegedly took retaliatory action against Napolitano. The Supreme Court has held that a "public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so." *Smith v. Arkansas State Highway Emp., Local*, 1315, 441 U.S. 463, 465 (1979)(per curiam). The Eighth Circuit has similarly recognized this constitutional right enjoyed by all public employees, reasoning that "[t]he First Amendment freedom of association, applied to the states by the Fourteenth Amendment, provides . . . union members with a constitutionally protected right to organize a labor union, even though they are public employees." *Int'l Ass'n of Firefighters, Local No. 3808 v. City of Kansas City*, 220 F.3d 969, 972 -973 (8th Cir. 2000)(citing *Smith*, 441 U.S. at 464-466). Other Circuits have recognized this right as well. *See Prof. Ass'n of Coll. Educators*, 730 F.2d at 262 (holding that "the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to

15

retaliate against those who do."). These precedents demonstrate that "the contours of the right [was] sufficiently clear that a reasonable official would understand that what [the Defendant allegedly did] violates th[e Plaintiff's constitutional] right" to freedom of association. *Johnson-El*, 878 F.2d at 1048.

Napolitano has met his burden at this stage of the proceedings of demonstrating genuine issues of material fact as to whether he suffered violations of his constitutional rights, and, if so, these rights were clearly established at the time of their alleged violation. Accordingly, Schott is not entitled to qualified immunity from suit in his individual capacity with respect to Napolitano's first and second claims.

### 5. Whether Defendants are Entitled to Summary Judgment on Napolitano's Third Claim for Relief under Neb. Rev. Stat. § 48-824.

The Defendants argue that they are entitled to summary judgment on Napolitiano's third claim for relief under Neb. Rev. Stat. § 48-824, because he failed to comply with the statutory requirements in Neb. Rev. Stat. § 48-4-825(1) for filing such a claim.

In his Complaint, Napolitano alleges that Defendants violated the Nebraska Industrial Relations Act, Neb. Rev. Stat. § 48-824(2)(a), (c) and (d), by discriminating against him as a result of his association with Local 4573. (Filing No. 1 at ¶¶ 45-53). Napolitano, however, cannot successfully establish a cause of action under § 48-824, because he did not comply with the procedural requirements in § 48-825(1), which states that "[a] proceeding against a party alleging a violation of section 48-824 is commenced by filing a complaint with the [C]ommission [of Industrial Relations ("CIR")] within one hundred eighty days after the alleged violation thereby causing a copy of the complaint to be served upon the accused party." Napolitano did not file a complaint with the CIR, and consequently, he has not "commenced" a "proceeding" against either of the two Defendants he now alleges violated his statutory rights under § 48-824(a), (c), and (d).

16

Napolitano argues that this Court should not interpret § 48-825(1) as the "exclusive" means of enforcing the statutory rights found within § 48-824. The Nebraska Supreme Court has not squarely addressed the question of whether § 48-825(1) provides the "exclusive" means by which an individual may enforce his statutory rights under § 48-824. Consequently, because "neither the legislature nor the highest court in a state has addressed [this] issue, [this Court] must determine what the highest state court would probably hold were it called upon to decide the issue." *Dahl v. ConAgra, Inc.*, 998 F.2d 619, 621 (8th Cir. 1993)(internal quotations omitted).

The Nebraska State Court of Appeals has interpreted § 48-825(1) as providing "the procedure for parties to commence an action before the CIR based on practices prohibited by § 48-824." *Davis v. Fraternal Order of Police Lodge No. 8 of Douglas County,* 731 N.W.2d 901, 907 (Neb. Ct. App. 2007). The *Davis* Court reasoned that Section 48-825(1) "requires the filing of a complaint with the CIR within 180 days after the alleged violation." *Id.* The Court of Appeals reasoned that this is because "[t]he CIR has jurisdiction over the prohibited practices discussed in § 48-824." *Id.* Similarly, the Nebraska Supreme Court has held that § 48-825 "allows a party alleging a violation of § 48-824 to bring a complaint in the CIR and gives the CIR authority to order an appropriate remedy for such violation." *Intn'l Union of Operating Engineers Local 571 v. City of Plattsmouth*, 660 N.W.2d 480, 484 (Neb. 2003)*.*

While this Court recognizes that the Nebraska Supreme Court has not directly decided the issue of whether the CIR has exclusive jurisdiction over § 48-824 claims, this Court concludes that the language of § 48-825(1) is clear. "If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning." *McCray v. Nebraska State Patrol*, 710 N.W.2d 300, 307 (Neb. 2006). "It is not within the

province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute." *Id.*  Absent any statutory language to suggest that § 48-824 creates a private right of action in a court other than the CIR, this Court will not infer such an intent on the part of the Nebraska Legislature.

Accordingly, the Court finds that both Defendants are entitled to summary judgment on Napolitano's third claim for relief.

## CONCLUSION

For the aforementioned reasons, the Court finds that the Defendants' Motion for Partial Summary Judgment should be granted with respect to Napolitano's third claim for relief based on alleged violations of the Nebraska Industrial Relations Act, and otherwise should be denied.

IT IS ORDERED:

1. The Defendants' Motion for Partial Summary Judgment (Filing No. 39) is granted in part, as follows:   The Plaintiff Steven Napolitano's Third Claim for Relief, based on alleged violations of the Nebraska Industrial Relations Act, is dismissed; and

2. The Motion is otherwise denied.


DATED this 23rd day of April, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge